NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THE HANOVER INSURANCE COMPANY, | : : : : : : : : : : : | Civil Action No. 16-1751-BRM-TJB |
| Plaintiff, | | |
| v. | | OPINION |
| RETROFITNESS, LLC, | | |
| Defendant. | | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff The Hanover Insurance Company ("Hanover Insurance") Motion for Partial Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 14.) Defendant Retrofitness, LLC ("Retrofitness") opposes the motion. (ECF No. 18.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Hanover Insurance's Motion is **GRANTED**.

**I.    BACKGROUND**

For the purpose of this Motion, the Court reviews "the facts presented in the pleadings and the inferences to be drawn therfrom in the light most favorable to the nonmoving party." *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988).

This dispute arises out of a claim by Retrofitness for insurance benefits arising out of an underlying lawsuit.[1] Hanover Insurance issued two identical claims-made-and-reported

---
[1] The underlying lawsuit initiated originally in the Superior Court of New Jersey, Essex County, and after being dismissed without prejudiced was re-filed in Middlesex County as the current

1

Miscellaneous Professional Liability Policies (the "Hanover Policies") to Retrofitness: (1) No. LH4 8902745 02, with a policy period of October 10, 2012 to October 10, 2013; and (2) LH4 8902745 03, with a policy period of October 10, 2013 to October 10, 2014. (ECF No. 5 ¶¶ 31-32; Hanover Policy 2012-2013 (ECF No. 14-8); Hanover Policy 2013-2014 (ECF No. 14-9) and ECF No. 18 at 4.) The Hanover Policies provide:

> **A. COVERAGE – WHAT THIS POLICY INSURES**
> 1. Professional Services Coverage
>    **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering or failure to render **professional services** by **you**.
>    The following additional requirements and limitations shall apply to coverage provided under **A.1** above and **A.3.** and **A.4.** below:
>    a. The **wrongful act** must have first occurred on or after the applicable **retroactive date(s)**;
>    b. **You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim**, or any knowledge of the **claim**, prior to the effective date of this **policy**; and,
>    c. The **claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period**, if applicable, and must arise from any **wrongful act** to which this **policy** applies.

(ECF Nos. 14-8 and 14-9 at 2 of 11.) Professional services is defined as "those services described in Item 6. of the Declaration which you perform for others for a fee." (*Id.* at 6 of 11.) Item 6 defines professional services as "Franchisor of Retro Fitness Health Clubs." (*Id.* at 1 of 2.) Wrongful act is defined as "any actual or alleged negligent act, error, omission, or misstatement committed in **your professional services**." (*Id.* at 6 of 11.) However, the Hanover Policies do not apply to, in part, claims "[a]rising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws." ("Exclusion 11"). (*Id.* at 7 of 11.) The policy further provides:

---

underlying lawsuit ("Underlying Lawsuit"). (Am. Compl. (ECF No. 5) ¶¶ 18-21, ECF No. 18 at 5 n.1, Underlying Lawsuit Compl. (ECF No. 5-3).) This lawsuit will be explained in greater detail below.

2

> **We** have the right to investigate and the exclusive right to defend any **claim** made under this **policy**, even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you**. **We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution against you. If a **claim** is not covered under this **policy**, **we** will have no duty to defend it.

(*Id.* at 3 of 11.)

On approximately January 16, 2014, Joseph Ardino, Samantha Ardino, Krista DeFazio, Scott Rticher, James Heaney and Phillip Mazucco (the "Underlying Plaintiffs") filed a class action complaint in the Superior Court of New Jersey, Middlesex County (the Underlying Lawsuit), against Retrofitness, ABC Financial Services Company, Inc., Z Times Three LLC d/b/a Retrofitness of Kenilworth, Britcarianna, LLC d/b/a Retrofitness Fairfield, PJ's Fitness Express, Inc. d/b/a Retrofitness of Bordentown; PRJ Holdings, LLC d/b/a Retrofitness of Wall, John/Jane Does 1-100, Defendant Retrofitness Franchises 1-75, and XYZ Corporation 1-10 (the "Underlying Defendants"). (ECF No. 5 ¶ 22 and ECF No. 5-3.) The complaint alleges the Underlying Defendants violated the: (1) New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"); (2) New Jersey Retail Installment Sales Act ("RISA"); (3) New Jersey Consumer Fraud Act ("NJCFA"); and (4) New Jersey Health Club Services Act ("HCSA"). (ECF No. 5 ¶ 23 and ECF No. 5-3.) Hanover Insurance alleges the Underlying Plaintiffs did not tender its defense to and demand indemnification from Hanover Insurance for the Underlying Lawsuit. (ECF No. 5 ¶ 30.)[2]

---

[2] Hanover Insurance was allegedly notified of the Essex County action and Retrofitness formally tendered its defense to and demanded indemnification from Hanover Insurance under the Hanover Policies. Hanover allegedly accepted the defense under a reservation of rights and acceded to Retrofitness' choice of independent counsel. (ECF No. 5 ¶ 29.)

On March 30, 2016, Hanover Insurance commenced this action seeking declaratory relief contending generally Hanover Insurance has no duty to defend or indemnify Retrofitness and other defendants in connection with the Underlying Lawsuit. (*See* ECF No. 1.) On July 25, 2016, Hanover Insurance filed an Amended Complaint dismissing all defendants but Retrofitness, still seeking declaratory relief. (*See* ECF No. 5.) Specifically, the Amended Complaint contains eight counts seeking declaratory judgment, only two of which are relevant to this Motion[3]: (1) declaratory judgment based on the absence of "Wrongful Acts"; and (2) declaratory judgment based on the Hanover Policies Exclusion 11. (ECF No. 5.)

On December 21, 2016, Hanover Insurance filed a Motion for Partial Judgment on the Pleadings. (ECF No. 14.) Retrofitness opposes the Motion. (ECF No. 18.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau*, 539 F.3d at 221 (citing *Jablonski*, 863 F.2d at 290–91). In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See Rosenau*, 539 F.3d at 221.

---

[3] Hanover Insurance only seeks partial judgment on the pleadings declaring it is not obligated to defend Retrofitness based on two of the eight counts of its Amended Complaint, Count I and Count IV. (*See* ECF No. 14-1 at 4 n.3.) Count I asks this Court to declare Hanover Insurance has no duty to defend or indemnify Retrofitness in connection with the Underlying Lawsuit for acts that are not "Wrongful Acts." (ECF No. 5 ¶¶ 39-42.) Count IV asks this Court to declare Hanover Insurance has no duty to defend or indemnify Retrofitness in the Underlying Lawsuit because all of the underlying allegations arise out of violations of consumer protection laws, which are excluded under Exclusion 11. (*Id.* ¶¶ 51-54.)

4

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, 2014 WL 4418059 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014)).

"While a complaint attacked by a Rule 12[] motion . . . does not need detailed factual allegations," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability

requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION

#### A. Rules of Insurance Policy Construction

The parties agree the Hanover Policies are to be construed under New Jersey law. (*See* ECF No. 14-1 at 8 and ECF No. 18 at 7-10.) Under New Jersey law, the interpretation of an insurance contract is a question of law. *Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 698 (N.J. Super. Ct. App. Div. 2004).

"[W]hen interpreting an insurance contract, the basic rule is to determine the intention of the parties from the language of the policy, giving effect to all parts so as to give a reasonable meaning to the terms." *Id. (citing Stone v. Royal Ins. Co.*, 511 A.2d 717, 718 (N.J. Super. Ct. App. Div. 1986); *Tooker v. Hartford Acc. & Indemn. Co.*, 319 A.2d 743, 745-746 (N.J. Super. Ct. App. Div. 1974)). Generally, "insurance policies are liberally construed to afford coverage that any fair interpretation will allow." *Am. Wrecking Corp. v. Burlington Ins. Co.*, 946 A.2d 1084, 1088 (N.J. Super. Ct. App. Div. 2008) (citing *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1260 (N.J. 1990) (citation omitted)). "Consistent with that principle, courts also endeavor to interpret

insurance contracts to accord with the objectively reasonable expectations of the insured." *Sealed Air Corp. v. Royal Indem. Co.*, 961 A.2d 1195, 1203 (N.J. Super. Ct. App. Div. 2008) (citations omitted).

Nevertheless, "the words of an insurance policy should be given their ordinary meaning, and in the absence of ambiguity, a court should not engage in a strained construction to support the imposition of liability." *Longobardi*, 582 A.2d at 1260 (citation omitted); *Simonetti*, 859 A.2d at 698 ("When the terms of the contract are clear and unambiguous, the court must enforce the contract as it is written; the court cannot make a better contract for parties than the one that they themselves agreed to.") (citations omitted). The Court's role is not to write for the insured "a better policy of insurance than the one purchased." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 562 A.2d 208, 214 (N.J. 1989) (citation omitted). However, "[w]hen the provisions of the text, read literally, would largely nullify the protections afforded by the policy, we restrict their meaning 'so as to enable fair fulfillment of the stated policy objective.'" *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 854 A.2d 378, 397 (N.J. 2004) (citation omitted).

However, where a genuine ambiguity exists, it must be resolved against the insurer. *DiOrio v. N.J. Mfrs. Ins. Co.*, 398 A.2d 1274, 1280 (N.J. 1979). If the language of the policy supports two meanings, one favorable to the insurer and one favorable to the insured, the interpretation supporting coverage must be applied. *Corcoran v. Hartford Fire Ins. Co.*, 333 A.2d 293, 298 (N.J. Super. Ct. App. Div. 1975). Nevertheless, an insurance policy is not ambiguous simply because two conflicting interpretations have been offered by the parties. *Rosario ex rel. v. Haywood*, 799 A.2d 32, 37-38 (N.J. Super. Ct. App. Div. 2002) (citing *Powell v. Alemaz, Inc.*, 760 A.2d 1141, 1147 (N.J. Super. Ct. App. Div. 2000)). "[I]n establishing ambiguity, the insured must do more than suggest a possible alternative reading of the contract; it must also offer an 'objectively

reasonable reading of the disputed passage.'" *Pittston Co. Ultramar Am. v. Allianz Ins. Co.*, 124 F.3d 508, 520 (3d Cir. 1997). A clear ambiguity exists when the "phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Lee v. Gen. Accident Ins. Co.*, 767 A.2d 985, 987 (N.J. Super. Ct. App. Div. 2001).

When exclusionary provisions are involved, it is well settled that the court should broadly read coverage provisions, and narrowly read exclusionary provisions. *Search EDP v. Am. Home Assur.*, 632 A.2d 286, 289 (N.J. Super. Ct. App. Div.), *certif. denied*, 640 A.2d 848 (N.J. 1994); *Aviation Charters, Inc. v. Avemco Ins. Co.*, 763 A.2d 312, 314 (N.J. Super. Ct. App. Div. 2000), *aff'd as modified*, 784 A.2d 712 (N.J. 2001). "However, exclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997) (quoting *Doto v. Russo*, 1659 A.2d 1371, 1378 (N.J. 1995)). Therefore, "where the words of an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Aviation Charters, Inc.*, 763 A.2d at 314 (quoting *Longobardi*, 582 A.2d at 1260; *Cobra Prods., Inc. v. Fed. Ins. Co.*, 722 A.2d 545, 549 (N.J. Super. Ct. App. Div. 1998), *certif. denied*, 733 A.2d 494 (N.J. 1999)).

Accordingly, the first step in examining an insurance policy is determining whether ambiguity exists. *Pittston Co. Ultramar Am.*, 124 F.3d at 520.

**B. Analysis**

Hanover Insurance argues it has no duty to defend Retrofitness in the Underlying Lawsuit because the complaint in the Underlying Lawsuit does not state claims covered under the Hanover Policies. (*See* ECF No. 14-1.) Specifically, Hanover Insurance argues (1) Exclusion 11 of the Hanover Policies is "clear and unambiguous in excluding consumer protection claims, (2) the

8

exclusion also precludes coverage for claims 'arising out of' consumer protection claims," and (3) the Underlying Lawsuit only alleges breaches of New Jersey consumer protection laws. (ECF No. 14-1 at 10.) It also argues there is no coverage for the NJCFA allegations in the Underlying Complaint because "intent is an element of" the NJCFA and the Hanover Policies are limited to claims arising from "Wrongful Acts," which "is defined to mean only any actual or alleged negligent act, error, omission, or misstatement committed in your professional service." (*Id.* at 14 (citation omitted).)

Retrofitness does not dispute the claims in the Underlying Lawsuit are consumer protection claims. (ECF No. 18 at 9.) However, it argues it had an objectively reasonable expectation the Hanover Policies covered the claims in the Underlying Litigation, and as such Hanover Insurance's Motion should fail. (*Id.* at 7-10.) Retrofitness also argues coverage is not precluded under Exclusion 11 or the definition of "Wrongful Act" because

> [a]ny viable theory of liability attached to Retrofitness as a franchisor in the Underlying Lawsuit would be based on a theory of negligence or vicarious liability because, as franchisor, Retrofitness does not engage directly with consumers, sell products or services to consumers, or enter into any contractual agreements with consumers. Notably, [the Underlying Plaintiffs] present a theory of negligence in the Underlying Lawsuit, alleging that Retrofitness, "prepared, drafted, dictated and/or controlled" the Membership Agreements ***used by Retrofitness franchisees***.

(*Id.* at 11.) Essentially, Retrofitness argues that because the Underlying Plaintiffs are by default alleging Retrofitness was negligent in its duties as a franchisor, the allegations against Retrofitness in the Underlying Lawsuit are covered under the Hanover Policies' definition of "Wrongful Act" and not excluded under Exclusion 11. (*Id.* at 11-12.) Lastly, Retrofitness argues determination on the pleadings is premature because there are outstanding questions of material fact. (*Id.* at 17-18.)

9

The Court recognizes the well-settled principles governing the interpretation of insurance policies that mandate a broad reading of coverage provisions, narrow reading of exclusionary provisions, resolution of ambiguities in the insured's favor, and construction consistent with the insured's reasonable expectations. However, none of these principles warrant a finding that Hanover Insurance is obligated to defend Retrofitness in the Underlying Lawsuit. The Hanover Policies clearly state, "If a **claim** is not covered under this **policy**, **we** will have no duty to defend it." (ECF Nos. 14-8 and 14-9 at 3 of 11.) *See Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992) ("[T]he duty to defend comes into being when the complaint states a claim constituting a risk insured against. Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." (citations omitted)). Exclusion 11 is unambiguous and unequivocal and there is no inherent inconsistency between the scope of the included risks and the excluded risks, and there is no indication that reading the exclusion as written frustrates the insured's reasonable expectations.

Exclusion 11 unambiguously and unequivocally provides the policy does not apply to claims "*[a]rising out of* false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, *violations of any local, state or federal consumer protection laws*." (ECF. No. 14-9 at 7 of 11 (emphasis added).) The phrase "arising out of"

> which frequently appears in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation. "The phrase 'arising out of' has been defined broadly in other insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided."

*Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1010 (N.J. 1998) (citing *Records v. Aetna Life & Cas. Ins.*, 683 A.2d 834, 837 (N.J. Super. Ct. App. Div. 1996) (quoting *Westchester Fire Ins. Co. v. Cont'l Ins. Cos.*, 312 A.2d 664, 669 (N.J. Super. Ct. App. Div. 1973), *aff'd o.b.*, 319 A.2d 732 (N.J. 1974)), *certif. denied*, 700 A.2d 876 (N.J. 1997); *see also Allstate Ins. Co. v. Moraca*, 581 A.2d 510, 514 n. 1 (N.J. Super. Ct. App. Div. 1990) (noting the exclusionary language in the homeowner's policy barring coverage for injuries "arising out of" ownership or use of motor vehicle was enforceable if "accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of an automobile") (citation omitted)). Therefore, Exclusion 11 excludes coverage for claims alleging direct violations of consumer protection laws and claims of negligence "arising out of" violations of consumer protection laws.

In the Underlying Lawsuit, the Underlying Plaintiffs allege the franchisees *and* Retrofitness violated the: (1) TCCWNA; (2) RISA; (3) NJCFA; and (4) HCSA. (ECF No.5-3 ¶¶ 182-214.) All statutes are New Jersey consumer protection laws. The NJCFA "was intended to be 'one of the strongest consumer protection laws in the nation.'" *Smith v. Citimortgage, Inc.*, No. 15-7629, 2015 WL 12734793, at *6 (D.N.J. Dec. 22, 2015) (quoting Governor's Press Release for Assembly Bill No. 2402, at 1 (June 29, 1971); *see also Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 364 (N.J. 1997) ("The history of the [NJCFA] is one of constant expansion of consumer protection."). "The TCCWNA, like NJCFA, is a statue consumer protection statute." *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014); *see* N.J.S.A. § 56:12–16. It was enacted "to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 549 (N.J. 2013). The New Jersey Supreme Court in *Perez v. Rent-A-Ctr., Inc.*, 892 A.2d 1255 (2006), *clarified on denial of reconsideration*, 188 902 A.2d 1232 (N.J. 2006), characterized RISA as a

"consumer protection statute[]." *Id.* at 1257. The HCSA states, "[a] health club services contract shall specifically set forth in a conspicuous manner on the first page of the contract the buyer's total payment obligation for health club services to be received pursuant to the contract." N.J.S.A. § 56:8–42. It was enacted in 1987 to supplement the NJCFA, and thus is also a consumer protection statute. *Martina v. LA Fitness Int'l, LLC*, No. 12-2063, 2012 WL 3822093, at *3 (D.N.J. Sept. 4, 2012); *Truglio v. Planet Fitness, Inc.*, No. 15-7959, 2016 WL 4084030, at *4 (D.N.J. July 28, 2016), *reconsideration denied*, 2017 WL 1197813 (D.N.J. Mar. 31, 2017) (holding "HCSA is one of several expansions to the [NJCFA] made by New Jersey's Legislature, which were added 'to address particular areas of concern and to include them specifically within [the NJCFA's] protective sweep.'" (quoting *Czar, Inc. v. Heath*, 198 N.J. 195, 201 (2009))). Indeed, Retrofitness does not dispute the claims in the Underlying Lawsuit are consumer protection claims. (ECF No. 18 at 9.) Because the allegations in the Underlying Lawsuit are for violations of New Jersey consumer protection laws, the Court finds Hanover Insurance is not obligated to defend Retrofitness in the Underlying Lawsuit.

Retrofitness' argument that coverage is not precluded under Exclusion 11 because the Underlying Plaintiffs are by default alleging Retrofitness was negligent in its duties as a franchisor, and therefore the allegations against Retrofitness in the Underlying Lawsuit are covered under the Hanover Policies' definition of "Wrongful Act" and not excluded under Exclusion 11 (ECF No. 18 at 11-12), is without merit. Retrofitness' argument that because it does not offer membership agreements to the general public the allegations in the Underlying Lawsuit could only be for negligence or vicarious liability, is also without merit. (*Id.* at 11.) Nowhere does the Underlying Lawsuit seek relief on the basis of negligence against Retrofitness or allege negligence on the part of Retrofitness. Instead, the Underlying Plaintiffs only seek the relief afforded by the four

consumer protection statutes. Nonetheless, even if the Underlying Lawsuit alleged Retrofitness was negligent or vicarious liable for actions "arising out of" the franchisees violations of the consumer protection statutes, that too is excluded under Exclusion 11.

Retrofitness also argues that regardless of the exclusion, it had an objective reasonable expectation the Hanover Policies covered the claims. (*Id.* at 7-10.) It further argues:

> As a franchisor, Retrofitness may be subject to liability arising out of the 'special risk' inherent in a franchisor/franchisee relationship, i.e. the risk of being sued for its franchisees alleged bad acts. This is precisely the risk against which Retrofitness sought to protect itself by purchasing the Hanover Policies, and this is precisely the type of cost for which it currently seeks coverage. Accordingly, a reasonable interpretation of the Policies would provide coverage, and as such, [Hanover Insurance's] Motion for Judgment on the Pleadings should fail.

(*Id.* at 10.) It also contends because the Hanover Policies provide coverage for claims "arising from a wrongful act in the rendering or failure to render professional services by [Retrofitness]" and *professional services* is defined as "Franchisor of Retro Fitness health Clubs," Hanover Insurance "cannot limit the scope of its coverage to a narrow definition of Retrofitness' professional services while simultaneously and conveniently attributing to Retrofitness a range of services so broad that coverage does not apply in this instance." (*Id.* at 11.) Retrofitness contends its expectation is reasonable because this matter is analogous to *Search EDP, Inc.*. The Court does not agree.

First, Exclusion 11 is unambiguous and unequivocal and could be understood by anyone who picked up the document and was able to read it. *Morrison v. Am. Int'l Ins. Co. of Am.*, 887 A.2d 166, 170 (N.J. Super. Ct. App. Div. 2005) (stating that "[w]hen an insured purchases an original policy of insurance he may be expected to read it and the law may fairly impose upon him such restrictions, conditions and limitations as the average insured would ascertain from such

reading"); *see Edwards v. Prudential Prop. & Cas. Co.*, 814 A.2d 1115, 1120 (N.J. Super. Ct. App. Div. 2003) (stating "an insured is chargeable with knowledge of the contents of an insurance policy in the absence of fraud or inequitable conduct on the part of the carrier") (citing M*erchants Indem. Corp. v. Eggleston*, 179 A.2d 505, 508 (N.J. 1962)), *certif. denied*, 822 A.2d 608 (N.J. 2003)). Even though Retrofitness alleges it procured the Hanover Policies to shield itself from the liability arising out of the "special risk" inherent in a franchisor/franchisee relationship, coverage is determined by what Retrofitness actually purchased and is what is written in the policy, not what it hoped to purchase. *Morrison*, 887 A.2d at 170 ("[I]t is . . . well settled that notwithstanding the unequal bargaining power between an insurance company an insured, [i]f the policy language is clear, the policy should be interpreted as written." (citations omitted)). There are countless of causes of actions that may flow from the franchisor/franchisee relationship and may be covered, however, consumer protection claims are explicitly excluded from coverage. Therefore, it was not objectively reasonable for Retrofitness to expect the Hanover Policies to cover the Underlying Lawsuit.

Second, in *Search EDP, Inc.*, the insurance policy in dispute was an errors and omissions policy that covered professional negligence, but excluded coverage for bodily injury. *Search EDP, Inc.*, 632 A.2d at 289-290. The plaintiff, who was insured under both a general liability insurance policy and an errors and omissions policy issued by the defendant, hired an employee without performing an adequate background check. *Id.* at 288. That employee subsequently committed an assault against a co-worker, who sued, asserting her injuries were directly attributable to the agency's professional negligence. *Id.* The court concluded the agency had been professionally negligent in failing to perform a background check, and that such negligence was the proximate cause of the victim's injuries. *Id.* at 289-90. The purpose of the errors and omissions policy was to

protect an insured who commits an act of professional negligence, but excluded coverage for bodily injury arising from such negligence. *Id.* at 290. Thus, the court stated "[i]f an act of professional negligence causes actionable damage to another, but if the insured's right to protection depends not on the nature of the act but rather on the nature of the resulting damage, we believe that the stated policy objective would be substantially nullified." *Id.* Therefore, the *Search EDP, Inc.* court concluded the errors and omissions policy would "fulfill its stated objective only by reading the bodily injury exclusion as excepting bodily injury claims alleged to have resulted from an act of professional wrongdoing." *Id.* Accordingly, the court found the victim's damages were caused by the agency's professional negligence, and coverage was justified pursuant to the proximate cause doctrine, notwithstanding a policy exclusion for bodily injury. *Id.* at 290-91.

Here, unlike *Search EDP, Inc.*, at issue in the Underlying Lawsuit are alleged statutory violations of consumer protection laws—not covered claims of professional negligence. This case is more akin to *Sherwood v. Kelido, Inc.*, No. A-1585-07T3, 2009 WL 1010988, at *1 (N.J. Super. Ct. App. Div. Apr. 15, 2009) at *4-5, in which the court concluded the insured's reliance on *Search EDP, Inc.* was misplaced because in *Search EDP, Inc.* the court determined the victim's damages were caused by the agency's professional negligence. In *Sherwood*, the peril that caused Daniel Sherwood's injuries was expressly excluded from coverage. *Id.* at *4. Therefore, the Court concluded the actions that led to the peril were not covered under the policy. *Id.* Here, even assuming Retrofitness was negligent in its oversight of the franchisees, the peril that caused the alleged claims and damages of the Underlying Plaintiffs is expressly excluded from coverage under Exclusion 11, unlike in the *Search EDP, Inc.* matter. Notably, there is no claim by the franchisees for negligent supervision.

15

The Court finds Exclusion 11 is unambiguous and unequivocal, there is no inherent inconsistency between the scope of the included risks and the excluded risks, and there is no indication that reading the exclusion as written frustrates the insured's reasonable expectations. Because the interpretation of an insurance contract is a question of law, *Simonetti*, 859 A.2d at 698, and the Court finds Exclusion 11 is unambiguous and unequivocal, no material issues of fact remain to be resolved and Hanover Insurance is entitled to judgment as a matter of law. *See Rosenau*, 539 F.3d at 221 (citing *Jablonski*, 863 F.2d at 290–91). Pursuant to Exclusion 11, Hanover Insurance is not obligated to defend Retrofitness in the Underlying Lawsuit and therefore Hanover Insurance's Motion is **GRANTED**.[4]

## IV. CONCLUSION

For the reasons set forth above, Hanover Insurance's Motion for Partial Judgment on the Pleadings is **GRANTED**.

Date: September 29, 2017       */s/ Brian R. Martinotti*
                               **HON. BRIAN R. MARTINOTTI**
                               **UNITED STATES DISTRICT JUDGE**

---

[4] Hanover Insurance currently seeks partial judgment on the pleadings declaring it is not obligated to defend Retrofitness based on two counts of its Amended Complaint, Count I and Count IV. (*See* ECF No. 14-1.) Count I asks this Court to declare Hanover Insurance has no duty to defend Retrofitness in connection with the Underlying Lawsuit for acts that are not "Wrongful Acts." (ECF No. 5 ¶¶ 39-42.) In its Motion, Hanover Insurance argues the NJCFA allegations in the Underlying Lawsuit are not "Wrongful Acts" because they require intent. (ECF No. 14-1 at 14-15.) Because the Court find's Hanover Insurance is not obligated to defend Retrofitness pursuant to Exclusion 11 (Count IV), it need not determine whether the NJFA falls within "Wrongful Acts" (Count I). Indeed, Hanover Insurance admits "the affirmance of Hanover's coverage position merely on Count IV will dispose of this entire coverage action." (ECF No. 14-1 at 4.)